IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| JENNIFER JAYE PARKINSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:17-cv-769-GMB |
| | ) | [WO] |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner, | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM OPINION AND ORDER**

On January 5, 2015, Plaintiff Jennifer Jaye Parkinson applied for a period of disability, supplemental security income, and disability insurance benefits under the Social Security Act ("the Act") alleging a disability onset date of November 2, 2011. Doc. 14-2 at 61. Parkinson then requested and received a hearing before an Administrative Law Judge ("ALJ") on July 25, 2016. Doc. 14-2 at 61. On September 29, 2016, the ALJ denied Parkinson's claims. Doc. 14-2 at 58. Parkinson's request for review of the ALJ's decision by the Appeals Council was denied on September 7, 2017. Doc. 14-2 at 2. As a result, the ALJ's decision became the final decision of the Commissioner of Social Security (the "Commissioner") as of September 7, 2017.

The case is now before the court for review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).[1] Based on the court's careful review of the parties' arguments, the record, and

---

[1] Pursuant to 28 U.S.C. § 636(c)(1) and Rule 73 of the Federal Rules of Civil Procedure, the parties have consented for the undersigned United States Magistrate Judge to conduct all proceedings in this case and to enter a final judgment. *See* Docs. 9 & 10.

the relevant case law, the court concludes that the decision of the Commissioner is due to be AFFIRMED, as set forth below.

## I. NATURE OF THE CASE

Parkinson seeks judicial review of the Commissioner's decision denying her application for disability insurance benefits and supplemental security income benefits. United States District Courts may conduct limited review of such decisions to determine whether they comply with applicable law and are supported by substantial evidence. 42 U.S.C. § 405. The court may affirm, reverse and remand with instructions, or reverse and render a judgment.

## II. STANDARD OF REVIEW

The court reviews a social security appeal to determine whether the Commissioner's decision "is supported by substantial evidence and based upon proper legal standards." *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997). The court will reverse the Commissioner's decision if it is convinced that the decision was not supported by substantial evidence or that the proper legal standards were not applied. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). The court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]," but rather it "must defer to the Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (internal quotations and citations omitted). "Even if the evidence preponderates against the Secretary's factual findings, [the court] must affirm if the decision reached is supported by substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Moreover, reversal is not warranted even if the court itself would have reached a result contrary to that of the factfinder. *See Edwards*

*v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

The substantial evidence standard is met "if a reasonable person would accept the evidence in the record as adequate to support the challenged conclusion." *Holladay v. Bowen*, 848 F.2d 1206, 1208 (11th Cir. 1988) (quoting *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983)). The requisite evidentiary showing has been described as "more than a scintilla, but less than a preponderance." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The court must scrutinize the entire record to determine the reasonableness of the decision reached and cannot "act as [an] automaton[] in reviewing the [Commissioner's] decision." *Hale v. Bowen*, 831 F.2d 1007, 1010 (11th Cir. 1987). Thus, the court must consider evidence both favorable and unfavorable to the Commissioner's decision. *Swindle v. Sullivan*, 914 F.2d 222, 225 (11th Cir. 1990).

The court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). There is no presumption that the Commissioner's conclusions of law are valid. *Id.*

### III. STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits, a claimant must show the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by

medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). Parkinson bears the burden of proving that she is disabled, and she is responsible for producing evidence to support her claim. *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

A determination of disability under the Social Security Act requires a five-step analysis. 20 C.F.R. § 404.1520(a). The Commissioner must determine in sequence:

(1) Is the claimant presently unable to engage in substantial gainful activity?
(2) Is the claimant's impairment(s) severe?
(3) Does the claimant's impairment(s) satisfy or medically equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
(4) Is the claimant unable to perform her former occupation?
(5) Is the claimant unable to perform other work given her residual functional capacity, age, education, and work experience?

*See Frame v. Comm'r, Soc. Sec. Admin.*, 596 F. App'x. 908, 910 (11th Cir. 2015). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986) (quoting 20 C.F.R. § 416.920(a)–(f)). "Once the finding is made that a claimant cannot return to prior work the burden of proof shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citing *Gibson v. Heckler*, 762 F.2d 1516 (11th Cir. 1985)).

## IV. FACTUAL BACKGROUND AND ADMINISTRATIVE PROCEEDINGS

After waiving her right to representation, Parkinson submitted her claim and participated in a hearing before the ALJ. Doc. 14-3 at 38. Parkinson was 40 years old on the disability onset date. Doc. 14-2 at 73. She has a high school education level. Doc.

4

14-2 at 73. Before her disability onset date, Parkinson worked as an optician, in the restaurant industry, as an inventory specialist for Office Depot, and at a gas station. Doc. 14-3 at 47–50. Parkinson has not been engaged in substantial gainful activity during the relevant period of November 2, 2011, the alleged onset date, through December 31, 2011, the date of last insurance coverage. Doc. 14-2 at 63. Parkinson's complaints include excruciating back pain, chronic migraines, and a number of mental illnesses. Doc. 14-3 at 52–53. Parkinson at times depends on her daughter for basic life activities, such as bathing and brushing her hair. Doc. 14-3 at 54–55. Parkinson has difficulty standing, walking, and sitting in the same position for extended periods of time. Doc. 14-3 at 58–59. Parkinson also suffers from anxiety, which affects her ability to go out in public. Doc. 14-3 at 57.

Following the administrative hearing, the ALJ found that Parkinson suffered from the following severe combination of impairments under 20 C.F.R. § 404.1520(c): "plantar fascial fibromatosis, lumbar degenerative disc disease, osteoarthritis, migraines, fibromyalgia, bipolar disorder, obsessive compulsive disorder, anxiety, personality disorder, and PTSD." Doc. 14-2 at 63. Despite this combination of severe impairments, the ALJ found, at step three of the analysis, that Parkinson did not have an impairment or combination of impairments that meets or medically equals the severity of one of those listed in the applicable regulations. Doc. 14-2 at 64. The ALJ further found, at steps four and five, that Parkinson has the residual functional capacity ("RFC") to perform "light work."[2] Doc. 14-2 at 67. Specifically, the ALJ concluded that Parkinson can perform light

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light

5

work with the following limitations: "[Parkinson] is limited to simple, routine tasks; is limited to making simple work related decisions and judgments; can frequently respond appropriately and interact with supervisors, coworkers, and the public; and with regard to changes in the work setting, is limited to simple work related decisions." Doc. 14-2 at 67. The ALJ ultimately concluded that because, according to the vocational expert, there are jobs that exist in significant numbers in the national economy that Parkinson can perform, Parkinson was not disabled within the meaning of the Social Security Act from November 2, 2011, her alleged disability onset date, through the date of the ALJ's decision. Doc. 14-2 at 74. Thus, the ALJ denied her claims. Doc. 14-2 at 74.

## V. DISCUSSION

Parkinson contends that there are two errors that warrant remand:[3] (1) the ALJ's failure to develop the record in not obtaining all of the available medical evidence; and (2) the Appeals Council's failure to consider new medical evidence. Doc. 12 at 1–2.

Having carefully considered the parties' arguments, the record, and the applicable legal authority, and for the reasons set forth below, the undersigned finds that the Commissioner's decision is due to be affirmed. The court will discuss each issue in turn.

**A.      Duty to Develop the Record**

Parkinson contends that the ALJ failed to develop an adequate record before

---

work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

[3] Parkinson's brief contains this statement of the issues. Doc. 12 at 1–2. Any issue not raised before the court is deemed to have been waived. *See Dial v. Berryhill*, 2017 WL 459859, at *3 (M.D. Ala. Feb. 2, 2017) (citing *Simpson v. Comm'r of Soc. Sec.*, 423 F. App'x 882, 885 (11th Cir. 2011) (concluding in a social security case that issues not raised before the district court are waived)).

deciding her case. Doc. 12 at 8. "It is well-established that the ALJ has a basic duty to develop a full and fair record." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). The ALJ is required to develop a complete medical history for at least the 12 months preceding the claimant's application for disability. 20 C.F.R. § 416.912(b)(1). However, the claimant bears the burden of proving that she is disabled, and she is responsible for producing evidence to support her claim. *See Ellison*, 355 F.3d at 1276. And the ALJ need not seek additional evidence "as long as the record contains sufficient evidence . . . to make an informed decision." *Ingram v. Comm'r*, 496 F.3d 1253, 1269 (11th Cir. 2007); *see also Tomblin v. Berryhill*, 2018 WL 5114143, at *5 (M.D. Ala. Oct. 18, 2018) (holding that an ALJ is "not required to order additional tests [if] the record contain[s] sufficient evidence for an informed decision" and the claimant relies on speculation rather than on a "show[ing] [of] clear prejudice or unfairness") (citations omitted). In evaluating the necessity for remand on this basis, courts look to see "whether the record reveals evidentiary gaps which result in unfairness or 'clear prejudice.'" *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995).

The first issue before the court, therefore, is whether the ALJ properly developed the record. Parkinson contends that the ALJ failed to request additional medical evidence and that this is cause for reversal. Specifically, Parkinson argues that the ALJ did not request relevant medical evidence from The Center for Pain, Dr. Roxana Carcelen, David R. Faber, and Prattville Baptist Hospital even though she identified these sources prior to the hearing. Doc. 12 at 9. Presumably to explain her own failure to gather these records, Parkinson notes her lack of representation before the ALJ, but she does not argue that her

7

waiver of the right to representation was invalid.[4] Doc. 12 at 8.

The court has reviewed the record before the ALJ and finds that it included enough evidence for the ALJ to make an informed decision. As an initial matter, the court notes that, at the hearing, the ALJ asked Parkinson whether there was any other evidence that should be considered before deciding her case. Doc. 14-3 at 70–72. At that time, Parkinson denied that there was anything further for the ALJ to consider. Doc. 14-3 at 71. While this fact may not be determinative of whether the ALJ developed a sufficient record, it does speak to the fundamental fairness of Parkinson's argument on review of the ALJ's decision.

More importantly, the ALJ considered a number of medical records and medical appointments related to Parkinson's back problems, migraines, and other physical impairments. Doc. 14-2 at 69. Further, the ALJ analyzed medical records related to Parkinson's mental illnesses, such as her bipolar disorder, PTSD, and other issues. Doc. 14-2 at 70. However, after considering the medical records, the ALJ determined that Parkinson did not have any greater limitations than those already outlined in the residual functional capacity. Doc. 14-2 at 69–70. The ALJ also considered the opinion evidence from Dr. Howard C. Harper, Jr., Dr. Hirenkumar Jani, Dr. Richard Carman, Dr. Robert Perlman, Dr. Donald Blanton, Dr. Harold Veits, and Shelly Dennis, and—of note—none of the physicians who provided opinion evidence indicated that they could not form an opinion without more evidence of the kind referenced by Parkinson. Doc. 14-2 at 70–72. The ALJ noted that the RFC considered Parkinson's subjective complaints and contained

---

[4] At the hearing, the ALJ asked Parkinson whether she voluntarily and knowingly waived her right to representation. Doc. 14-3 at 37–38. Parkinson responded in the affirmative. Doc. 14-3 at 38. The Commissioner argues that Parkinson voluntarily waived her right to representation, Doc. 13 at 4–5, and the record supports this contention.

a more restrictive exertional limitation than the opinion evidence, and also determined that the record did not support a greater limitation. Doc. 14-2 at 72. The ALJ assigned great weight to Dr. Carman's opinion that, in February 2012, he could see no reason for a disability claim, and observed that Parkinson was in no acute distress. Doc. 14-2 at 71. In sum, the ALJ engaged in a wide-ranging review of the medical evidence in the record, including reports of pain, diagnoses, treatment for migraines with medication, medical imaging, and other records. Doc. 14-2 at 68–72.

Because the ALJ based her decision on the opinion evidence and findings by Parkinson's medical providers combined with other medical evidence, there is no evidentiary gap. And without an evidentiary gap, any claim of prejudice is mere speculation. *Brown*, 44 F.3d at 935. In short, the court concludes that the ALJ was not required to obtain additional medical records because the record contained sufficient evidence for an informed decision regarding whether the claimant was disabled, *see Vesy v. Astrue*, 353 F. App'x 219, 224 (11th Cir. 2009), and Parkinson has failed to show clear prejudice or unfairness. *Brown*, 44 F.3d at 935.

**B.     New Evidence Before the Appeals Council**

Parkinson's second issue arises from her request for review by the Appeals Council. Parkinson contends that the Appeals Council failed to consider the new evidence she submitted in the form of records from Dr. Roxana Carcelen, Dr. David R. Faber, Prattville Baptist Hospital, and the Center for Pain. Doc. 12 at 9.

The Appeals Council's responsibilities are set forth in the regulatory scheme. "[I]n reviewing decisions based on an application for benefits, the Appeals Council will only consider additional evidence under paragraph (a)(5) of this section if you show good cause

for not informing us about or submitting the evidence as described in § 416.1435."[5] 20 C.F.R. § 416.1470(b). The Appeals Council, while not required to make specific findings of fact, must consider additional evidence that is new, material, and chronologically relevant. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1261 (11th Cir. 2007) (stating that the "Appeals Council must consider new, material, and chronologically relevant evidence and must review the case if 'the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record'"). "Evidence is chronologically relevant if it 'relates to the period on or before the date' of the ALJ's decision." *Banks v. Comm'r, Soc. Sec. Admin.*, 686 F. App'x 706, 709 (11th Cir. 2017) (quoting 20 C.F.R. § 416.1476(b)(1)). In this instance, therefore, the chronologically relevant evidence must have been generated on or before September 29, 2016. Doc. 14-2 at 74.

New evidence is "material, and thus warrants a remand, if 'there is a reasonable possibility that the new evidence would change the administrative outcome.'" *Flowers v. Comm'r of Soc. Sec.*, 441 F. App'x 735, 745 (11th Cir. 2011) (quoting *Hyde v. Bowen*, 823 F.2d 456, 459 (11th Cir. 1987)). And the Appeals Council "must review the case if the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record." *Barclay v. Comm'r of Soc. Sec. Admin.*, 274 F. App'x 738, 743 (11th Cir. 2008). In this case, the Appeals Council made the following findings:

> You submitted medical records from Prattville Baptist Hospital, dated August 2, 2016 to October 9, 2016 (20 pages); medical records from The

---

[5] Parkinson asserts that she "had good cause for not submitting the new and material evidence prior to the ALJ decision in that she was unrepresented, notified the ALJ of the treating sources, and relied upon the ALJ's representations that the ALJ would obtain the additional evidence." Doc. 12 at 10. The court assumes for purposes of this opinion that this amounts to good cause for the omission of these records.

10

> Center For Pain, dated April 1, 2016 to October 14, 2016 (32 pages); medical records from Roxana Carcelen, MD, dated December 22, 2015 to May 20, 2016 (47 pages); medical records from North Shelby Psychiatric Services, dated January 18, 2016 to July 22, 2016 (17 pages); medical records from Shelby Baptist Health Center, dated March 31, 2016 to April 6, 2016 (4 pages); and a handwritten medication list, dated July 24, 2016 (2 pages). We find this evidence does not show a reasonable probability that it would change the outcome of the decision. We did not consider and exhibit this evidence.

Doc. 14-2 at 3. Parkinson argues, however, that the Appeals Council did not sufficiently evaluate the new evidence. Doc. 12 at 9.

The Appeals Council is not required to explain its rationale for denying a request for review. *See Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 784 (11th Cir. 2014). On the other hand, it may not perfunctorily adhere to the decision of the ALJ. *Epps v. Harris*, 624 F.2d 1267, 1273 (5th Cir. 1980).[6] And while there is no duty to provide a detailed rationale for its decision, the Appeals Council must apply the correct legal standards. *Mitchell*, 771 F.3d at 784. A failure to provide a reviewing court with sufficient reasoning to determine whether those standards have been applied mandates reversal. *Hethcox v. Comm'r, Soc. Sec. Admin.*, 638 F. App'x 833, 836 (11th Cir. 2015) (internal citation omitted).

In this case, the Appeals Council found that there was no reasonable probability that the evidence from Dr. Faber, Dr. Carcelen, Prattville Baptist Hospital, and The Center for Pain would change the outcome of its decision. Doc. 14-2 at 3. Plainly, the Appeals Council found that the evidence was immaterial even if it did not use that term. Evidence

---

[6] *See Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (holding that decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981 are binding in the Eleventh Circuit).

is material only if "there is a reasonable possibility that the new evidence would change the administrative outcome." *Hyde v. Bowen*, 823 F.2d 456, 459 (11th Cir. 1987). The Appeals Council's statement, therefore, is not a statement that it did not evaluate the evidence, but a statement that it evaluated the evidence but did not find it to be material.

In support of her challenge to this finding, Parkinson highlights only one group of records, contending that "[t]he medical evidence of Parkinson's treatment with the Center for Pain of Montgomery provides substantial support to her allegations regarding the severity of her back problems and the pain and limitations resulting from the same, which far exceeded findings of the ALJ and the limitations indicated in the RFC." Doc. 12 at 10. While this argument is largely conclusory, it is at least an attempt to argue the materiality of the Center for Pain records. Parkinson makes no such argument as to the new evidence from the other three sources. By omitting from her brief any argument as to the proffered new evidence from Dr. Roxana Carcelen, Dr. David R. Faber, and Prattville Baptist Hospital, Parkinson has abandoned any claim that this evidence should have been considered by the Appeals Council. *E.g.*, *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) (citations omitted) ("We have long held that an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority.").

The court therefore will consider only Parkinson's claim that the Appeals Council improperly refused to consider her new evidence from the Center for Pain. When "the Appeals Council refuses to consider new evidence submitted to it and denies review," the "courts will have to look at the pertinent evidence to determine if the evidence is new and material, the kind of evidence the [Appeals Council] must consider in making its decision

whether to review an ALJ's decision." *Falge v. Apfel*, 150 F.3d 1320, 1324 (11th Cir. 1998); *see also Hargress*, 883 F.3d at 1309–10 (analyzing whether new evidence should have been considered by determining whether the new evidence was material to the ALJ's decision and chronologically relevant).

The court's review of the record reveals that there is no reasonable possibility that the new evidence from the Center for Pain would have changed the ALJ's decision because it does not undermine the ALJ's core conclusion that Parkinson can perform light work with certain limitations. Doc. 14-2 at 72. The ALJ's conclusion was based on Parkinson's physical limitations and presenting symptoms, Doc. 14-2 at 69; on her mental health treatment, Doc. 14-2 at 70; and on medical opinion evidence. Doc. 14-2 at 71. With respect to her physical health, the ALJ noted that medical imaging supported certain physical abnormalities but that Parkinson generally was observed not to be in acute distress despite subjective complaints of severe pain. Doc. 14-2 at 67–69. Nothing in the new Center for Pain records materially contradicts these findings, as again Parkinson generally was evaluated as being free from acute distress, Doc. 14-3 at 106, 113, 120 & 125; and frequently presented with only mild tenderness or pain. *E.g.*, Doc. 14-3 at 107 & 114. Moreover, Parkinson reported that the treatment she received at the Center for Pain significantly ameliorated her pain. *E.g.*, Doc. 14-3 at 128 (confirming that a steroid injection resulted in "70% relief for approximately 6 weeks"). From a mental health standpoint, the new records do not call into question the ALJ's conclusions—in part because Parkinson's treatment at the Center for Pain was focused on pain management for physiological symptoms, not on psychological treatment. *See generally* Doc. 14-3 at 104–33. Likewise, the new records do not include any opinion evidence materially impacting

the ALJ's conclusions. *See generally* Doc. 14-3 at 104–33.  For all of these reasons, the court finds that the additional evidence is not material because, without more, it is not likely to change the administrative decision, as the Appeals Council concluded.

## VI.  CONCLUSION

Based on the foregoing, the undersigned concludes that the Commissioner's decision is supported by substantial evidence and based upon the proper legal standards. It is therefore ORDERED that the decision of the Commissioner denying benefits is AFFIRMED.

A final judgment will be entered separately.

DONE on the 7th day of February, 2019.

_____
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE